# United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| **Name of Assigned Judge or Magistrate Judge** | Frederick J. Kapala | **Sitting Judge if Other than Assigned Judge** | |
| **CASE NUMBER** | 06 C 50032 | **DATE** | 3/4/2009 |
| **CASE TITLE** | Ruud et al. v. McLeodUSA, Inc. et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion for partial summary judgment as to damages [91] is granted in part and denied in part. Plaintiffs' motion to strike [114] is denied as moot.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

This case involves an underground telecommunications cable that runs in the public right-of-way along Rockton Avenue in Owen Township. On December 13, 2007, this court granted plaintiffs, Thomas and Linda Ruud, partial summary judgment on their ejectment and trespass claims which alleged that in 1997, defendants, McLeodUSA, Incorporated, and McLeodUSA Telecommunications Services, Inc., buried a telecommunications cable on the land plaintiffs now own without obtaining proper permission.[1] The only remaining issue in this case is damages. Defendants now move for partial summary judgment on the issue of damages arguing that, as a matter of law, plaintiffs are not entitled to punitive damages, and that plaintiffs' damages should be limited to a maximum of $10,000.[2]

Plaintiffs argue that defendants' motion for summary judgment should be denied. They assert punitive damages are appropriate because defendants (1) took no action to ascertain the owner of the land prior to installation of the cable, (2) lacked adequate policies and procedures, and (3) threatened and harassed the plaintiffs when the dispute over the cable arose. Plaintiffs also argue that there is an issue of fact as to whether the amount of mesne damages is greater than $10,000.

### I. BACKGROUND

After a review of McLeodUSA's documents with respect to the installation of the cable along the property at issue, George Spangler, Vice President of Outside Plant Network for McLeodUSA, determined that defendants hired NewCom Technologies, Inc., a well-qualified firm, to engineer and procure the rights of way and permits for the construction of the fiber network that encroached on plaintiffs' property. Robert J. Probasco, senior design consultant and project manager for NewCom, was a field manager for NewCom in 1997 and participated in NewCom's work to plan and design a telecommunications network for the Rockford, Illinois, area, part of which ran along Rockton Avenue on what is now plaintiff's property.

According to Probasco, he managed the field engineer who worked on defendants' installation in Owen

Township. Probasco testified that prior to laying cable, NewCom did not do a title search to determine the owners of the land along Rockton Avenue. Probasco explained that neither he nor anyone else at NewCom believed that a private easement was necessary for the segment of cable at issue in this case. In his experience, local governments often have power to allow access to road rights-of-way without any additional permission from a private landowner, and he believed that was the situation in Owen Township. As a result, he sought and obtained permission for the planned route from Gerald Witfang, the Highway Commissioner of Owen Township. He did not believe any other approval or permission was necessary. In fact, Probasco testified that from 1975 through the present, this was the only place NewCom had ever seen where the dirt underneath the right-of-way was not owned by the governing body.[3]

Michelle McLaughlin, the right-of-way coordinator for defendants, began working for defendants in 1999. In 2004, she created a document known as MSP-2627 which contains defendants' right-of-way policies and procedures. According to McLaughlin, she incorporated much of the material she was trained with into MSP-2627. MSP-2627 provides policies that apply to both public and private rights-of-way. The public right-of-way section of MSP-2627 does not provide for obtaining both municipal approval and a landowner's permission to use private land which is under a public right-of-way. However, § 3.6 of MSP-2627 provides a process for obtaining easements on private rights-of-way. Pursuant to this section, if defendants are aware the land is in fact private, they procure a private easement.

In October 2004, Mr. Ruud struck defendants' buried cable several times with an auger. In February 2005, defendants sent an invoice to plaintiffs for the damage to the cable. Mr. Ruud responded with a letter to defendants disputing the charges on the invoice. He had conversations with defendants' representatives informing them that his title policy showed no easements in favor of defendants on his property. In May 2005, defendants sent a letter to plaintiff demanding payment of $21,600.59. The letter stated that failure to pay the sum would result in the account being referred to the legal department and that defendants had determined that they were within the right of way and plaintiffs were responsible for the damage to the cable. In June 2005, Mr. Ruud wrote defendants a letter disputing their assertions and requesting proof that defendants had a right to install a cable on plaintiffs' property. In September 2005, defendants responded with another letter demanding payment. Mr. Ruud again challenged defendants' right to have the cable on his land. According to Mr. Ruud, at some point thereafter, Mr. Ruud spoke with a representative of defendants who "was abusive" and told Ruud that "everybody who starts this way always ends up paying."

Plaintiffs admit that the fair market value of their land is between $10,000 and $20,000 per acre. W. Dale Scott, an Illinois Certified General Appraiser also estimates the length of the easement at 2505 feet. Scott estimates the value of an 8 foot wide, permanent easement of this length (approximately .46 acres) on this property is $345.00. Ray Ferguson, a real estate attorney, with experience in negotiating easements and leases for property owners, estimates that the same tract of land has a fair market value of $39,000.

## II. DISCUSSION

A court may only grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In evaluating such a motion, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Hemsworth, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id.

## STATEMENT

A. Punitive Damages

In Illinois, "punitive damages are not favored in the law," and "will be awarded only where the defendant's conduct is willful or outrageous due to evil motive or a reckless indifference to the rights of others." Franz v. Calaco Dev. Corp., 352 Ill. App. 3d 1129, 1137 (2004); see also Loitz v. Remington Arms Co., Inc., 138 Ill. 2d 404, 414-16 (1990). "[T]hey are available only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation." Franz, 352 Ill. App. 3d at 1137. "[P]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence." Loitz, 138 Ill. 2d at 415 (quotation marks omitted). Accordingly, punitive damages will not usually be allowed in a trespass action when the trespass was committed under a mistaken claim of right. Freese v. Buoy, 217 Ill. App. 3d 234, 247-48 (1991). The initial decision whether punitive damages may be imposed is a matter normally reserved to the trial judge. Loitz, 138 Ill. 2d at 414.

Defendants assert that punitive damages are not merited in this case because defendants were acting under a mistaken claim of right. Plaintiffs disagree. Although they do not present any evidence refuting Probasco's contention that NewCom thought the land belonged to the Township, they argue that a mistaken claim of right cannot be asserted to avoid punitive damages where the trespasser never attempted to ascertain the ownership interests of the property in the first place. Specifically, plaintiffs point to Probasco's statement that NewCom did not have responsibility to determine ownership or complete a title search.

Plaintiffs rely on Rodrian v. Seiber, 194 Ill. App. 3d 504 (1990), and Roark v. Musgrave, 41 Ill. App. 3d 1008 (1976) to support their argument. In Rodrian, the court found that the issue punitive damages was properly submitted to a jury where the defendant bulldozed over his neighbor's property prior to obtaining the outcome of a survey to determine the property line, and continued to cross over the property line repeatedly after being advised by his neighbor of his trespass on her land. 194 Ill. App. 3d at 510. In Roark, the defendant admitted that he had cut fences and cut down trees on the plaintiff's property thinking that they belonged to a neighbor who permitted the defendant to remove trees from his land. 41 Ill. App. 3d at 1010. Although the defendant contended that he did not know that the trees that were being taken belonged to plaintiff, he never attempted to ascertain exactly where the boundary lines lay. Id. The court concluded that punitive damages were merited because the defendant's failure to identify the owner of the property before cutting fences to enter upon the plaintiff's property demonstrated a reckless disregard of the plaintiff's property rights. Id. at 1014-15.

Plaintiffs argue that defendants' actions in this case are analogous to those of the defendants in Rodrian and Roark. However, these cases are distinguishable from this case in two significant ways. First, in both cases it was clear that another party owned nearby land and that the defendant failed to make any investigation at all as to where the boundary lines began. In contrast, in this case, defendants were not aware that they could or would enter plaintiffs' property, such that a survey was necessary. Rather, defendants believed that they had received all the permission to enter the property they needed from Owen Township. All of the experience NewCom had previously had with public right-of-ways indicated that the public entity gave all the necessary permission for entry onto land under a right-of-way. Thus, unlike the defendants in Rodrian and Roark, defendants here did not recklessly disregard another's apparent property right, but rather sought permission from a party they mistakenly believed had the complete right over the land.

Second, no facts in this case show that defendants here were on notice of their trespass until long after the cable was installed, or that they continued installation upon learning they needed further permission. In contrast, in Rodrian the defendant proceeded to bulldoze the plaintiff's land after learning he had passed her property line, and in Roark the defendant cut fences to enter upon the plaintiff's property. Thus, in both those cases, the defendants were put on notice that their activities may lead them to infringe on another's land, but failed to investigate further.

**STATEMENT**

The court finds the facts of this case more similar to the circumstances in Yearian v. Columbia Nat'l Bank of Columbia, 86 Ill. App. 3d 508 (1980). In Yearian, the defendant's agent sought to repossess a debtor's car. Id. at 509. In doing so, he entered the plaintiff's vehicle under the mistaken belief that the plaintiff's similar-looking car was that of a debtor. Id. at 509-10. Prior to entering the car he inquired whether the debtor was in the vicinity, but he failed to check the license plate number or take any other measures to verify the identity of the car's owner. Id. Despite the defendant's agent's failure to take all reasonable measures prior to entering the vehicle, the court held that punitive damages were not merited. Id. at 514. The court reasoned that although the defendant's agent could have "armed himself with further information about the vehicle," such as the license plate number, his familiarity with the car, and his inquiry into whether the debtor's car was in the parking lot, demonstrated that the agent did not disregard the rights of others in such a way to merit punitive damages. Id.

This case is similar. Although defendants could have gathered more information about Illinois law, their past experience that no private authorization was required for the type of easement sought, combined with their pursuit of authorization and permission from the appropriate township official led them to believe that they had obtained a right to bury their cable on the land under the public right-of-way. Although a title search would have been prudent, under these circumstances defendants' failure to assure a title search was complete does not demonstrate a complete disregard for plaintiffs' property rights that is comparable to Rodrian and Roark. Rather, defendants' actions reflect only mere inadvertence or an error of judgment that constitutes ordinary negligence. As such, the facts of this case are consistent with the circumstances of Yearian and other cases where courts have applied the general rule that punitive damages are not appropriate where trespass results from a mistaken claim of right. See, e.g., Freese, 217 Ill. App. 3d at 248; Wetmore v. Ladies of Loretto, Wheaton, 73 Ill. App. 2d 454, 467 (1966).[4]

Plaintiffs argue that even if this is a traditional case of mistaken claim of right, defendants' continued lack of adequate policy and procedure regarding the installation of cable, as well as their conduct toward plaintiffs, are aggravating circumstances that support punitive damages. The court disagrees. Neither of these circumstances alters the conclusion that defendants had no evil motive and exhibited no reckless indifference in placing their cable on plaintiffs' property. As to defendants' policies, although MSP-2627 could more clearly address circumstances like this one, where a private party maintains an interest in what would usually be deemed a public right-of-way, this court cannot find defendants have failed to address the rights of private owners. In fact, MSP-2627, specifically provides information that recognizes private right-of-ways exist, and provides that "Operations and/or Outside Plant" will determine when an easement is required.

Moreover, although negative or abusive comments by trespassers to rightful owners of property have been considered in determining whether punitive damages are merited, see Miller v. Simon,100 Ill. App. 2d 6, 11 (1968), such exchanges must be taken in conjunction with the other circumstances of the case, see id; Wetmore, 73 Ill. App. 2d at 467-68. In Wetmore, the court noted that the plaintiff-trespasser had entered the land of the defendant, an order of nuns, on numerous occasions "without invitation or authority to do so, to complain in rather forceful manners of the supposed trespasses by defendant." 73 Ill. App. 2d at 467. Upon entry, the plaintiff-trespasser engaged in conduct that "obviously frightened the young people at the convent, as well as the Sisters," resulting in one occasion in which "one of the Sisters was compelled to call the sheriff to remove him." Id. at 459. Yet, despite this behavior the court found that punitive damages for the trespass were not merited, in part, because some of the plaintiff's actions were rooted in a mistaken claim of right. Id. at 467.

Comparatively, defendants' conduct in this case was not nearly as troubling as that in Wetmore. Other than defendants' written requests for payment for the repair of their severed cable, plaintiffs cite only one instance of defendants' conduct in which a representative of defendants "was abusive" and told Ruud that "everybody who starts this way always ends up paying." This court cannot find, in light of the other facts of the case, that this one instance of "abusive" behavior merits punitive damages.[5]

**STATEMENT**

Accordingly, for the forgoing reasons, defendants' motion for summary judgment on the issue of punitive damages is granted.

B. Limitation of Damages

Defendants next urge this court to limit plaintiffs' damages to a maximum of $10,000. Defendants argue that plaintiffs have admitted that the fair market value of their land is no more than $20,000 per acre, and that the land used by defendants is no larger than one-half of one acre. As such, defendants assert that "by any rational analysis, an underground easement for a portion of the land already subject to a public road should cost something less than the fee simple value." Despite this logic, however, plaintiffs have submitted the statement of their expert that the land at issue is worth $39,000. Plaintiffs also point out that the two most current easements purchased by defendants from private landowners in Illinois exceeded $10,000.

Although defendants' logic seems persuasive, this court's duty at summary judgment "is not to weigh the evidence." Hemsworth, 476 F.3d at 490. Rather, this court must determine whether there is a genuine issue for trial. Id. In doing so, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. . . . [T]his usually means adopting . . . the plaintiff's version of the facts." See Scott v. Harris, 550 U.S. 372, ____, 127 S. Ct. 1769, 1774-75 (2007) (quotation marks omitted).

In this case, there is a genuine issue of fact as to mesne damages. Plaintiffs have presented evidence to refute defendants' contention that the easement is worth no more than $10,000. As such, the court will not grant defendants' motion to limit the damages amount at $10,000.

1. Plaintiffs purchased the property located at 6934 North Rockton Avenue on August 8, 2003.

2. Plaintiffs have filed a motion to strike the portions of defendants' response to plaintiffs' Local Rule 56.1 statement that include and rely on citations to portions of defendants' own reply brief. However, even if the court were to disregard the portions of defendants' response that plaintiffs challenge, and accept as true facts otherwise unrefuted by defendants, it would not alter the result of this opinion. Accordingly, for the purposes of this order, the court does not consider these challenged portions of defendants' response, and plaintiffs' motion is denied as moot.

3. Spangler also testified that prior to when the issue with plaintiffs first arose in 2004, defendants did not know that plaintiffs owned any land beneath the right of way at issue.

4. The fact that defendants made a mistake of law rather than a mistake of fact as in Yearian, does not alter this conclusion. In Wetmore, 73 Ill. App. 2d at 467-68, the court found that punitive damages were not merited where the plaintiff thought he had the legal right to block a shared roadway.

5. Although the court recognizes that defendants' attitude and actions are somewhat similar to the defendants in Miller, this case is distinct from Miller in that undisputed evidence here shows defendants possessed a mistaken belief in good faith that they had a right to the land at issue. Compare Miller, 100 Ill App. 2d at 11.